UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| MARY ELIZABETH SEXTON, ) | |
| ) | |
| Plaintiff, ) | No. 6:23-CV-07-HAI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| MARTIN O'MALLEY, *Commissioner of* ) | & ORDER |
| *Social Security*, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

**I. Background and Procedural History**

Plaintiff Mary Elizabeth Sexton is a former client of Kentucky attorney Eric C. Conn. D.E. 5-1 at 2.[1] In 2006 and 2007, with Conn as her lawyer, Sexton applied for and obtained supplemental security income benefits. *See* D.E. 12-1 at 11-15 (2007 ALJ Decision). During this period, Conn (with the assistance of Administrative Law Judge David Daugherty and four doctors) secured benefits for clients based on fraudulent disability applications. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018).

The Social Security Administration ("SSA") "first learned about possible wrongdoing" in 2006, "when a senior case technician and a master docket clerk . . . raised concerns that Daugherty was reassigning Conn's cases to himself and rapidly deciding them in the claimants' favor." *Hicks*, 909 F.3d at 793. In 2014, the Office of the Inspector General ("OIG") identified thousands of applications—all from former clients of Conn—which it "'had reason to believe,' were tainted by fraud." *Id.* at 794. In 2015, with the OIG's consent, the SSA proceeded with redetermination

---

[1] Page number references are to the blue page numbers generated by the Court's Electronic Filing System.

1

hearings to evaluate the flagged applications.  *Id.*  This included Sexton.  *See* D.E. 12-1 at 16-19 (Notice of Redetermination Hearing); *id.* at 22-23 (Notice Remanding Case to ALJ).

On June 8, 2016, following a redetermination hearing, an ALJ concluded that there was insufficient evidence to find Sexton disabled under the Social Security Act ("the Act").  *See* D.E. 12-1 at 40.  In reviewing the record, the ALJ disregarded the March 27, 2007 report by Dr. Frederic T. Huffnagle, one of Conn's physician co-conspirators, because the information "was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office." *Id*. at 34.  The Appeals Council denied review of the ALJ's decision, and Sexton sued the Commissioner (at the time, Carolyn W. Colvin) in federal court.  *See id.* at 47-49; *Sexton v. Colvin*, 7:16-CV-12-DLB, at D.E. 1.  In 2019, the court remanded the case to the SSA for a second redetermination hearing consistent with the Sixth Circuit's decision in *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018).  *See Sexton*, 7:16-CV-12-DLB, at D.E. 29.  Per Judge Bunning's order, Sexton's benefits were reinstated until the SSA completed redetermination proceedings.  *See* D.E. 12-1 at 79-81 (Notice of Reinstatement).  In November 2021, Sexton sued in federal court, seeking to prevent the redetermination hearing.  *See Sexton v. Kijakazi,* 6:21-CV-187-CHB, 2022 WL 1751003 (E.D. Ky. May 31, 2021).  The court dismissed the claim on the basis that Sexton had not exhausted her administrative remedies.  *See id.*

In September 2022, an ALJ held a redetermination hearing concerning Sexton's application.  *See* D.E. 1-2 at 4 (2022 ALJ Decision).  The ALJ concluded that Sexton was not disabled at the time of her application through the time of the favorable ALJ decision.  *See id.* at 19.  Following this decision, the SSA ceased Sexton's benefits.  *See id.*

Sexton then filed suit in this Court, challenging the conclusion that she is not disabled under the Act.  *See* D.E. 1 (Compliant).  She attaches an affidavit from October 2021 (D.E. 1-4)

2

and other exhibits.  Sexton also moved for a preliminary injunction, supported by a memorandum.  D.E. 5.  She asked the Court to enjoin the Commissioner from halting her disability benefits while this appeal of an unfavorable Social-Security decision is pending.  The Commissioner responded in opposition (D.E. 12), and Sexton replied (D.E. 13).  The Commissioner attached a declaration by Christopher Hargis, "a Division Chief Administrative Appeals Judge (AAJ) in the Office of Appellate Operations (OAO) in the Office of Analytics, Review, and Oversight (OARO) for the Social Security Administration (SSA)."  D.E. 12-1.  This declaration describes the procedural history of Plaintiff's various Social-Security matters.  Plaintiff has lodged no objection to Judge Hargis's recitation of the procedural history, so the Court has treated it as authoritative.

The Commissioner has also filed the administrative transcript.  D.E. 14.

After this briefing on the injunction motion, the parties consented to the referral of this matter to a magistrate judge.  D.E. 15, 17.  Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

On October 25, 2023, the Court issued an order denying Sexton's motion for a preliminary injunction.  D.E. 18.  The Court accordingly weighed the factors of "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."  *Id*. at 3 (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020)).  The Court found that all four factors weighed against a preliminary injunction.  *Id*. at 11.

Sexton appealed the Court's denial of a preliminary injunction.  D.E. 19.  On November 8, 2023, the Commissioner moved that this matter be dismissed on the basis that Sexton never filed

her merits brief, as required by this Court's Rules.  D.E. 21.  Rather than dismissing the case, the Court ordered Sexton to file a merits brief.  D.E. 23.

On January 9, 2024, Sexton filed her "Proof Brief" (D.E. 24), which was docketed as a motion.  The Proof Brief incorporates by reference Sexton's preliminary-injunction motion and memorandum (D.E. 5).  The Commissioner filed a response brief on February 5.  D.E. 26.

On May 6, 2024, the Sixth Circuit affirmed this Court's denial of a preliminary injunction.  D.E. 28; *Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 WL 1994918 (6th Cir. May 6, 2024).  The Court of Appeals issued its mandate on June 28.  D.E. 29.  A petition for writ of certiorari is pending with the Supreme Court.  D.E. 31.  On June 26, 2024, the Commissioner filed a notice explaining that the Social Security Administration had changed its policy regarding overpayments for former clients of Eric Conn.  D.E. 30.  "This means the agency will no longer demand or collect overpayments stemming from redeterminations of former clients of Conn," such as Sexton.  *Id*.

## II.  Sexton's Excessive-Delay Claim

Sexton primarily seeks remand on the same basis she sought a preliminary injunction—that the SSA violated the Act's "immediately" requirement by holding her redetermination hearing fifteen years after its employees first raised concerns of Conn's fraud.  D.E. 24; D.E. 5-1 at 12.

This Court previously found, in denying the motion for a preliminary injunction, that this claim did not have a strong likelihood of success on the merits.  The Court explained as follows:

> The Act states, in part, that "[t]he Commissioner . . . shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits[.]" 42 U.S.C. § 405(u)(1)(A).  The Commissioner may delay proceedings if "a [state or federal prosecutor] with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud."  *Id.*

4

In *Hicks*, the plaintiffs argued that the Commissioner violated the Act's "immediately" requirement by initiating redetermination hearings in 2015, despite having reason to know of Conn's fraud in 2006. *See Hicks*, 909 F.3d at 811. The Sixth Circuit agreed that the redetermination hearings were untimely because there was "reason to believe" that applications from Conn's clients were fraudulent "as far back as 2006, when SSA whistleblowers began raising alarms, and certainly by 2013, when the U.S. Senate issued a 166-page report detailing Conn's and Daugherty's abuses." *Id*. Still, the Commissioner prevailed because "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Id.* at 812 (internal quotation marks omitted) (quoting *United States v. James Daniel Good Real Prop*., 114 S. Ct. 492, 506 (1993)). Further, the Sixth Circuit noted that it must consider "general purpose" of the statute prior to imposing sanctions. *See id.* (quoting *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 443 (2016)). In this context, the Sixth Circuit found it "counterintuitive to hold that a failure to reverse fraudulent determinations quickly enough precludes the government from reversing those determinations at all." *Id.* at 813. Acknowledging that the plaintiffs "may have been prejudiced" by the delays, it found that there were alternative remedies (such as requiring additional procedural protections) other than precluding redetermination hearings. *Id.*

This case is no different than *Hicks*. Sexton asserts, like the plaintiffs in *Hicks*, that the Commissioner failed to comply with the Act's "immediately" requirement by holding her redetermination hearing years after having reason to suspect fraud. However, even if Sexton successfully argues this point, this does not convince the Court that she has a strong likelihood of success on the merits. Indeed, in *Hicks*, the Sixth Circuit found for the Commissioner despite concluding that the SSA failed to comply with the immediate-action requirement. The case turned on the fact that the Act—the same one at issue here—"does not specify a consequence for noncompliance with statutory timing provisions[.]" *Hicks*, 909 F.3d at 812.

The only post-*Hicks* case law that Sexton cites is from the District of South Carolina. *See Kirk v. Berryhill*, 388 F. Supp. 3d 652 (D.S.C. 2019). That court, on similar facts, expressed (in dicta) concern as to whether the Commissioner complied with the immediate-action requirement. *See id.* at 662. Still, the court did not elaborate and expressly declined to resolve that issue. *Id.* This alone is insufficient to meet Sexton's high burden of proof.

Sexton also argues that the SSA did not provide her with the "procedural protections" that the Sixth Circuit referenced in *Hicks*. D.E. 5-1 at 8. However, *Hicks* did not clearly state that failure to provide additional procedural protections would result in sanctions by the district court. Rather, the court used procedural protections as *an example* of an alternative remedy to precluding the redetermination hearing. *See Hicks*, 909 F.3d at 813. Further, Sexton does not cite

5

> any case law supporting her assertion. To be sure, in the context of the underlying action, Sexton raises a reasonable argument. However, at this stage, the Court is unpersuaded that Sexton has shown a strong likelihood of success on the merits. Given *Hicks* and the absence of case law supporting Sexton's position, the likelihood-of-success factor weighs against issuance of a preliminary injunction.

D.E. 18 at 5-7.

Sexton appealed this finding. As to the statutory claim, the Sixth Circuit found:

> Sexton argues that although the SSA was aware of allegations of fraud as early as 2006, it failed to conduct redetermination hearings "immediately," in violation of the Act. But we have considered and rejected this very argument, as the district court correctly concluded. In *Hicks*, we held that even if the SSA failed to comply with the Act's timing provision when it initiated redetermination efforts nine years after first learning about Conn's scheme, there was no statutory violation because the Act does not provide a remedy for noncompliance. 909 F.3d at 811-12 ("[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.") (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)). We explained that it "seems counterintuitive to hold that a failure to reverse fraudulent determinations quickly enough precludes the government from reversing those determinations at all." *Id.* at 813. Rather than prevent redetermination hearings wholesale, we explained that the government could "implement greater procedural protections" to minimize prejudice from the SSA's delay. *Id.*
>
> *Hicks* controls our analysis here. Even if the SSA failed to "immediately" hold Sexton's redetermination hearing after learning of Conn's fraud, the statute provides Sexton no relief for that delay. The district court therefore did not err when it rejected Sexton's claim that the Commissioner's failure to hold a prompt redetermination hearing violated the Act.

*Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 WL 1994918, at *3 (6th Cir. May 6, 2024).

The Sixth Circuit also addressed Sexton's argument that the delay caused a violation of her due-process rights:

> Sexton next argues that the delay in holding her redetermination hearing violated her rights to due process under the Fifth Amendment. She also claims that because of the delay, she was unable to access case files that would have supported her claim. We find that Sexton's due process claim is not likely to succeed because she was granted adequate procedural protections at her redetermination hearing, and because she has not identified additional procedures to which she is constitutionally entitled.

6

Beneficiaries have a strong property interest in the continued receipt of Social Security benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996). Consequently, the government must implement certain procedures before depriving claimants of that interest. *Mathews*, 424 U.S. at 332. We held in *Hicks* that when the SSA has reason to believe fraud was involved in a benefits application, the government must, at a minimum, "proffer some actual basis for believing that the plaintiffs' evidence is fraudulent"; and the plaintiff must "have an opportunity to 'rebut the Government's factual assertions before a neutral decisionmaker.'" 909 F.3d at 799 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)); *see also Kirk v. Comm'r of Soc. Sec.*, 987 F.3d 314, 326-327 (4th Cir. 2021) (holding that claimants were denied adequate procedural protections when ALJs excluded evidence from physicians who were associated with Conn and refused to allow plaintiffs to contest that fraud determination).

We also considered whether the plaintiffs were entitled to additional procedures under the three-pronged test articulated in *Mathews v. Eldridge*. *Hicks*, 909 F.3d at 799-804 (citing 424 U.S. at 335). *Mathews* requires courts to weigh three factors to determine "the constitutional adequacy of [administrative] procedures" "prior to the initial termination of benefits": "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the Government's interest." 424 U.S. at 333-35. The *Hicks* court held that the first and third *Mathews* factors favored the plaintiffs, as "social security disability beneficiaries have a substantial interest in receiving their benefits," and providing beneficiaries the opportunity to rebut allegations of fraud did not impose an extraordinary burden on the government. 909 F.3d at 802-04. Under the second factor, the court concluded that the risk of erroneous deprivation was "intolerably high *whenever* claimants are precluded from rebutting material factual assertions about their case." *Id.* at 801.

But unlike in those cases, Sexton had an adequate opportunity to challenge the SSA's fraud determination. Following *Hicks*, the SSA published an Acquiescence Ruling listing procedures that it would implement to comply with our ruling. Social Security Acquiescence Ruling 19-1(6), *Hicks v. Commissioner of Social Security: Disregarding Evidence During Redeterminations Under Sections 205(u) and 1631(e)(7) of the Social Security Act*, 85 Fed. Reg. 6255-02, 2020 WL 529791 (Feb. 4, 2020). The SSA specified that before an ALJ excluded evidence that was suspected to be fraudulent, the adjudicator "will consider the individual's objection to the disregarding of that evidence." *Id.*

Sexton's second redetermination hearing occurred after the Acquiescence Ruling was issued, and her hearing complied with its requirements. Sexton had the opportunity to object to the agency's assertions of fraud, and to present evidence

7

rebutting those allegations. In support of her claim, she presented her own evidence that included testimony from her mother and a vocational expert. Also, a witness from the OIG testified at her hearing to explain why he believed Sexton's application contained fraudulent information, and the witness was cross-examined by Sexton's attorney. After considering Sexton's supporting evidence and objections, the ALJ ultimately excluded the evidence submitted from Dr. Huffnagle as fraudulent and denied her claim based on the remaining evidence in the record. Because she had the chance to rebut the OIG's assertion of fraud and to present evidence supporting her claim, Sexton has not demonstrated that the procedures employed at her hearing violated her due process rights.

Moreover, she has not identified additional procedures that she was denied at her hearing. Sexton argues that due to the government's delay, she could not obtain necessary case files from Conn's office that may have been burned by Conn or confiscated by the government. But the government asserts that it has provided Sexton with several medical files, including documents from her initial eligibility timeframe. Sexton has not specified which missing files would aid her in challenging the SSA's determination.

We recognize that, because of the delay, Sexton may have been prejudiced in her ability to establish her initial eligibility. But, to the extent she claims that there are no circumstances in which her redetermination hearing would be constitutional, her claim fails under *Hicks*. 909 F.3d at 813 (holding that cancelling redetermination hearings would be "counterintuitive" and would undermine the general purpose of the statute, which is to "enable the SSA to end fraudulent determinations more quickly than the reopening procedures at that time allowed"). So, although Sexton may have been prejudiced by the delays, she did not show that she was entitled to any additional procedural protections under the Fifth Amendment, beyond what we recognized in *Hicks*. Nor has she specified which materials she lacks to establish her case. Accordingly, the district court did not err by finding she is not likely to succeed on the merits of her due process claim.

*Id.* at *3-4.

The Court now directly addresses the merits of Sexton's unreasonable-delay claim. The Court is cognizant that its prior ruling (D.E. 18) was about *likelihood of success* on the merits. And the Court of Appeals reviewed that decision for an abuse of discretion. D.E. 28 at 4; *Sexton*, 2024 WL 1994918, at *2. Nevertheless, having considered the filings made after the Court's preliminary-injunction ruling (D.E. 24, 26), nothing convinces the Court to reach a different conclusion. It remains true that "*Hicks* controls." *Sexton*, 2024 WL 1994918, at *3. The

8

governing statute provides no relief for any failure to "immediately" hold a redetermination hearing. *Id*. And Due Process does not require procedures beyond what was recognized in *Hicks*. *Id*. at *4. Although the Court is sympathetic to Sexton's circumstances, her claim for relief based on the delay in her redetermination hearing fails for the reasons discussed above.

### III. Merits of the ALJ Decision

Sexton argues in her merits brief that the Administrative Law Judge ("ALJ") improperly weighed the evidence and posed an improper hypothetical to the Vocational Expert ("VE"). D.E. 24 at 2-4.

### A. The ALJ's Decision

In March 2006, Sexton protectively filed her claim for supplemental security income under Title XVI, claiming disability beginning November 24, 2005. *See* D.E. 1-2 at 4. The claim ultimately led to a hearing before ALJ David B. Daugherty, where Sexton was represented by attorney Eric C. Conn. ALJ Daugherty found Sexton disabled, beginning November 24, 2005, based entirely on the report of Dr. Fredrick Huffnagle. *Id*. But then it came to light that Conn was running a fraud. And among the coconspirators were ALJ Daugherty and Dr. Huffnagle. *Id*. at 4-5. Sexton's case was selected for redetermination, and the SSA issued a new, unfavorable decision, in 2016. The Court of Appeals then decided *Hicks* in 2018. In September 2022, ALJ Sandra R. DiMaggio Wallace conducted a post-*Hicks* redetermination hearing. ALJ Wallace found "reason to believe" Dr. Huffnagle's report was fraudulent and refused to consider that evidence. *Id*. at 5. Sexton testified, as did her mother Donna Sexton, a registered nurse, VE Linda Lyons, and Special Agent Michael McGill from the Office of the Inspector General. *Id*. Sexton was represented, as here, by attorney Ned Pillersdorf. *Id*. at 4. ALJ Wallace found Sexton not disabled during the relevant period, March 14, 2006, through April 4, 2007. D.E. 1-2 at 19.

9

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim. The ALJ followed these procedures in this case. *See* D.E. 1-2 at 8-10.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Sexton "did not engage in substantial gainful activity between March 14, 2006, the SSI application date, and April 4, 2007, the date of the prior decision." D.E. 1-2 at 10.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Sexton has the following severe impairments: "Arnold Chiari Malformation with prior surgical repair and recurrent anemia (20 CFR 416.920(c))." D.E. 1-2 at 10.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Sexton failed to meet this standard. D.E. 1-2 at 13. The ALJ considered several listings (including especially section 3.00 (Respiratory System), section 4.00 (Cardiovascular System), and section 11.00 (Neurological System)) but found none of them satisfied in Sexton's case. *Id*. Sexton does not appear to challenge this step-three determination. Her briefing nowhere addresses the elements of these or any other listed impairments.

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is her ability to do physical and mental work activities on a sustained basis despite limitations from the impairments. The ALJ found Sexton had the RFC "to perform light work as defined in 20 CFR 416.967(b) except that she could

10

only occasionally balance, and she could never climb ladders, ropes, and scaffolds. She had to avoid unprotected heights, hazardous machinery, and commercial driving." D.E. 1-2 at 14.[2]

Sexton appears to object to the ALJ's RFC finding. She argues she had "significant intellectual and neurological mental health challenges" and "serious physical and emotional problems," including a seizure disorder and anxiety (or panic) attacks, that rendered her disabled. D.E. 24 at 2. To be clear, Sexton does not in her Proof Brief explicitly connect these problems to a listed impairment or explain why they qualify as "severe" impairments. The word "severe" does not appear in her Proof Brief. Neither does Sexton specifically critique the 2022 RFC. The Proof Brief is vague, but the Court interprets it as primarily taking aim at the RFC, but possibly arguing for additional severe impairments.[3]

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of her residual functional capacity), she is not disabled. 20

---

[2] The regulations define "light work:"

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time

20 C.F.R. § 416.967(b).

[3] To be clear, Sexton does reference "severe anxiety and memory problems" in her preliminary-injunction motion. D.E. 5-1 at 5. Despite this characterization, there is no explicit argument that the ALJ should have classified these conditions as "severe." Sexton's Proof Brief does not mention memory problems at all. But it does refer to anxiety disorder, anxiety attacks, and panic attacks. D.E. 24. Sexton also says in her Complaint that she has "been fighting severe depression and has experienced suicidal ideation for many years." D.E. 1 at 4 ¶ 5. But her Proof Brief nowhere mentions depression or suicide. D.E. 24.
    The Court notes again that Sexton did not file a merits brief within the period provided by the Court's briefing schedule. But the Court permitted her to file a late merits brief after the Commissioner moved to have this matter dismissed for failure to prosecute. *See* D.E. 21, 23. The Proof Brief was Sexton's opportunity to clearly state on the record her points of disagreement with the 2022 ALJ's analysis.

11

C.F.R. § 404.1520(f).  The 2022 ALJ found no past relevant work through April 4, 2007.  D.E. 1-2 at 18.

> Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).  The ALJ found Sexton was not disabled at this step.  D.E. 1-2 at 18.  The ALJ found, based on the VE's testimony, that Sexton could find work as, for example, a marker, router, or office helper.  *Id*.

Accordingly, on October 5, 2022, the ALJ issued an unfavorable decision, finding that Sexton was not disabled.  D.E. 1-2 at 19.

### B.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The substantial

evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id.* § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

13

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[4] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021). And the Court reasserts this mandatory guidance from the Standing Procedures for Social Security actions:

> A brief must support the assertions of fact by citations to particular parts of the record. More specifically, the parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.

D.E. 3 ¶ 5.

Here, Sexton does not appear to be alleging a legal error on the ALJ's part. So the Court reviews the issues Sexton raises under the substantial-evidence standard.

---

[4] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

### C. Analysis

Sexton says she is "an individual of significant intellectual challenges." D.E. 24 at 1. She says the September 2022 hearing included "overwhelming evidence" she had "such significant intellectual and neurological mental health challenges that it was impossible for her to work during the relevant period." *Id*. at 2. Sexton says, "the proof on behalf of her actually came from her mother, Donna Sexton." *Id*. Sexton says that during the relevant period, she "had a multitude of serious physical and emotional problems," including anxiety attacks and "a significant seizure disorder." *Id*. The mother testified that Sexton took Topamax for seizures and Sexton was hospitalized for seizures and anxiety attacks. *Id*. at 2-3. Sexton's mother testified that Sexton could not live alone because she could not be relied upon to take her medications. *Id*. at 3. Sexton had "significant anxiety problems," issues with balancing, and "panic attacks which prevented her from working." *Id*. The mother testified Sexton "could not go to work without having panic attacks." *Id*. And the seizures resulted from Sexton's brain surgery or the underlying Arnold-Chiari malfunction. *Id*.

> Sexton now argues the 2022 ALJ
>
> dismissed practically all of the testimony of seizures and mental health issues then basically concluded that the fact that Mary Sexton was prescribed Topamax was for headaches and not her seizure disorder. The Administrative Law Judge, without any apparent basis found that the seizure disorder was not present during the relevant time period. This finding was totally inconsistent with the finding that Mary Sexton "had been diagnosed with seizures." R. 1-2; Pg. 20[.]

D.E. 24 at 4.

Concerning issues with balance, the ALJ noted these problems at several points. D.E. 1-2 at 14, 15. Sexton's balance problems are addressed in the RFC, which says Sexton can "only occasionally balance," can never climb, and must avoid unprotected heights, hazardous machinery,

15

and commercial driving. *Id*. at 11. Sexton has not shown the ALJ's treatment of her balance issues is unreasonable or unsupported by substantial evidence.

Concerning memory problems, the ALJ noted the mother's testimony that Sexton had memory problems. D.E. 1-2 at 15. The ALJ found this issue non-severe because it "did not cause more than a minimal limitation in the recipient's ability to perform basic mental work activities." *Id*. at 11. The ALJ explained that

> mental status examinations during the period at issue showed that the recipient had normal memory and concentration (see e.g., Exhibit B9F/48). The recipient did not make any complaints to her doctors of difficulty with attention, concentration, or memory during the period at issue, and, as noted, she did not seek psychiatric treatment during the relevant period. As such, the undersigned finds that she had no significant deficits in concentrating, persisting, and maintaining pace.

*Id*. at 12. Sexton points to no medical evidence in the record to contradict these findings.

Concerning seizures, the ALJ addressed this issue in the context of discussing severe impairments:

> The recipient alleged that she experienced seizures during the relevant period. However, while the record indicates that the recipient had been diagnosed with seizures, she did not report any seizures to her medical providers during the period at issue (Exhibits B9F/53, Bl 4F/3). Prior hospital admissions did not result in a diagnosis of seizures, and the recipient did not report symptoms consistent with seizures at those visits (Exhibits B9F/14, BIOF/1-3, B 12F/3). The recipient was not placed on anti-seizure medication during the period at issue; while she was prescribed Topamax in November of 2006, she testified at her prior hearing in April of 2016 that this was prescribed for headaches rather than any seizure activity (Exhibit B14F/3; Hearing Testimony). While the record does indicate that the recipient did eventually require emergency room visits and hospitalization for seizures, these visits did not occur until 2010/2011 and later, well after the end of the period at issue in this case. There is no evidence that the recipient experienced any seizures or required treatment for seizures during the period at issue. As such, the undersigned finds this impairment to be non-severe, as it caused the recipient no more than minimal functional limitations [during the relevant period].

D.E. 1-2 at 10-11.

Sexton points to no medical evidence in the record establishing she experienced seizures during the relevant period. She thus does not meet her burden here. Her only argument is that the ALJ's dismissing the seizure testimony was inconsistent with the ALJ's own observation that Sexton "had been diagnosed with seizures." D.E. 24 at 4 (citing D.E. 1-2 at 10). In context, there is no contradiction. As just quoted above, the ALJ explained that "while the record indicates that the recipient had been diagnosed with seizures, she did not report any seizures to her medical providers during the period at issue." D.E. 1-2 at 10. It can both be true that Sexton was diagnosed with seizures at some point in her life and that her seizure issues did not significantly limit her abilities during the period from March 14, 2006, to April 4, 2007.

As for anxiety, the ALJ also addressed this issue while discussing the "social function" factor in the context of determining whether severe psychological limitations were present:

> Although the recipient carried a diagnosis of anxiety, she did not take medications for this condition (Exhibits B7E, B9E). Furthermore, she did not seek treatment for an anxiety disorder from a mental health professional during the relevant period, indicating that anxiety and other impairments did not cause significant difficulty in social functioning. She was not diagnosed with agoraphobia or social anxiety disorder. Overall, therefore, the undersigned finds that the recipient had no limitation in social functioning.

D.E. 1-2 at 12. In discussing the RFC, the ALJ noted that the mother testified that Sexton had trouble working due to her anxiety and that Sexton takes medication for anxiety. *Id*. at 15. However, the ALJ ascribed "little weight" to the mother's testimony. *Id*. at 17. Although she is an experienced registered nurse, the mother was not a disinterested third party. *Id*. And the ALJ found the mother's testimony "simply not consistent with the preponderance of the objective evidence and observations by medical doctors in this case." *Id*.

Sexton's Proof Brief does not directly challenge ALJ's decision that Sexton's mother's testimony had limited credibility. D.E. 24. Although Sexton takes issue with the ALJ's rejection

17

of her mother's testimony, she does not argue as to why the ALJ's credibility determination was unreasonable or unsupported by substantial evidence. Rather, the ALJ was reasonable in opining that the weight of the mother's testimony was diminished by her motivation to help her daughter.

As for the consistency issue, to meet her burden, Sexton needs to point to specific medical evidence in the record that agrees with her mother's testimony. D.E. 3 ¶ 5 ("[T]he parties shall provide the Court with specific page citations to the administrative record to support their arguments."). But this she does not attempt to do. D.E. 24. It is not the Court's job to review the record looking for information consistent with the mother's testimony. D.E. 3 ¶ 5. Thus, the ALJ's credibility determination stands.

Although Sexton's Proof Brief does not contain the word "severe," the Court briefly notes that the 2022 ALJ found that Sexton's "anxiety, dyslexia, and problems with memory and concentration" were "non-severe because they did not cause more than a minimal limitation in [Sexton's] ability to perform basic mental work activities." D.E. 1-2 at 11. The Claimant bears the burden of showing that an impairment qualifies as "severe." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 473 (6th Cir. 2003); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are . . . disabled."). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). For the reasons discussed above, the ALJ's determination that these issues were not "severe" during the relevant period was not unreasonable or unsupported by substantial evidence.

Finally, Sexton criticizes the ALJ's questioning of the VE. D.E. 24 at 4. The ALJ posed a hypothetical question concerning a person who, among other things, "can have occasional interaction with supervisors and coworkers, but none with the general public." D.E. 14-1 at 1998.

The jobs the VE identified are the same jobs the ALJ relies on in her opinion. D.E. 1-2 at 18. Here, the ALJ's hypothetical was *more restrictive* than the ALJ's ultimate RFC (as the RFC does not include any social limitations). And yet, even with a more restrictive hypothetical RFC, the VE still found a sufficient number of jobs in the national economy in 2007. There was no error here, much less one that prejudiced Sexton.

## IV. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's request to remand (D.E. 24) is **DENIED**.

(2) **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 3rd day of September, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge